O

# United States District Court
# Central District of California

| | |
|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, TRUSTEES OF THE OPERATING ENGINEERS HEALTH AND WELFARE FUND, TRUSTEES OF THE OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST, and TRUSTEES OF THE OPERATING ENGINEERS TRAINING TRUST, <br><br> Plaintiffs, <br><br> v. <br><br><br> COLEMAN CONSTRUCTION, INC., a California corporation, <br><br> Defendant, | Case No. 2:17-cv-08170-ODW-MRW <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [14]** |

## I.    INTRODUCTION

Plaintiffs, Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, and Trustees of the Operating Engineers Training Trust (collectively, "Trustees") bring this action against Defendant Coleman Construction, Inc. ("Coleman") for (1) breach of a written collective bargaining agreement and violation of the Employee Retirement Income Security Act ("ERISA"), and (2) breach of written contract. (*See* Compl., ECF No. 1.) Coleman has failed to

respond to the Complaint, the Clerk entered default on December 22, 2017, and Trustees now move for entry of default judgment against Coleman. (ECF Nos. 12, 14.) For the reasons discussed below, the Court **GRANTS** the Motion. (ECF No. 14.) [1]

## II. BACKGROUND

### A. Factual Background

Plaintiffs are the Trustees of four express trusts (collectively, the "Trusts") created pursuant to written declarations of trust ("Trust Agreements") between the International Union of Operating Engineers, Local Union No. 12, and various construction multi-employer associations in Southern California and Southern Nevada. (Compl. ¶ 5.) The Trusts are now, and were at all times material to this action, labor-management multiemployer trusts created and maintained pursuant to section 302(c)(5) of the Labor Marketing Regulatory Act [29 U.S.C. § 186(c)(5)]. (*Id.*)

Coleman is an employer and on January 21, 2014, Coleman executed and delivered a written collective bargaining agreement ("CBA") to Local Union No. 12. (*Id.* ¶ 9.) In the CBA, Coleman agreed to be bound by the Master Labor Agreement ("Master Agreement") and signed written acknowledgements and acceptances of each of the Trust Agreements. (*Id.*) As a result, Coleman was required to submit monthly reports to the Trustees, listing the work performed by its covered employees and the number of hours worked by or paid to these employees. (*Id.* ¶ 16(A).) Based on these calculations, Coleman agreed to pay fringe benefit contributions for each hour worked or paid. (*Id.*) These amounts were due on a monthly basis. (*Id.* ¶ 16(C).) In the event of a default, Coleman also agreed to pay the Trustees all legal and auditing costs in connection with the collection of any delinquency. (*Id.* ¶ 25.)

---

[1] Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

As required, Coleman submitted monthly reports to the Trustees reflecting work performed by Coleman's employees during the months of May 2017, June 2017, August 2017, and September 2017. (*Id.* ¶ 17.) However, Trustees allege that Coleman failed to pay or, to timely pay, the required fringe benefit contributions—outlined in the submitted monthly reports and totaling $29,797.04—in violation of the Trust Agreements, Master Agreement, and Coleman's statutorily-mandated obligation under ERISA § 515. (*Id.*) Pursuant to the Master Agreement, if Coleman failed to pay fringe benefit contributions, Coleman would be considered delinquent and would pay the Trustees the greater of $25.00 per month or 10 percent (10%) of the total amount then due as liquidated damages for each delinquency. (*Id.* ¶ 21.)

On July 26, 2017, Coleman entered into a written settlement agreement ("Settlement Agreement") with the Trustees to resolve the amounts owed between March 2017 and June 2017. (*Id.* ¶ 29; Decl. of Bernardo Ramos ("Ramos Decl.") ¶ 15, ECF No. 16.) In the Settlement Agreement, Coleman admitted that it owed Trustees $26,712.96 and agreed to pay that amount, plus interest on the declining balance of that total sum at the rate of eight percent (8%) per annum from July 15, 2017, until the balance was paid in full. (Compl. ¶ 30.) Both parties agreed that this sum would be paid in twelve monthly installments of $2,323.72 each. (*Id.*) The Settlement Agreement also required Coleman to timely report and pay fringe benefit contributions to the Trustees pursuant to the Master Agreement and related Trust Agreements. (*Id.*) Coleman agreed that if it failed to timely pay the monthly installments, or failed to adhere to its monthly contribution obligations under the Master Agreement, the amount owed pursuant to the Settlement Agreement would become immediately due. (*Id.*)

Under the Settlement Agreement, Trustees received only two installment payments from Coleman, totaling $4,647.44. (Ramos Decl. ¶ 18.) Trustees allege that Coleman breached the Settlement Agreement because Coleman failed to timely pay the remaining fringe benefit contributions owed based on its monthly reports since

August 2017. (Compl. ¶ 31.) Trustees also allege that Coleman has failed to pay its monthly installments due under the Settlement Agreement since September 2017. (Ramos Decl. ¶ 18.) Trustees provided Coleman with written notice of its default, but Coleman failed to timely cure the breach. (Compl. ¶ 31.) Trustees allege they are entitled to the $23,326.57 balance due under the Settlement Agreement for the work performed from March 2017 through October 2017, and $9,156.95 for unpaid fringe benefit contributions for the work performed from August 2017 through October 2017. (Mot. 5, ECF No. 15.)

**B.    Procedural Background**

On November 8, 2017, Trustees filed a Complaint against Coleman for two claims: (1) breach of CBA and violation of § 515 of ERISA, and (2) breach of written contract (Settlement Agreement). (*See* Compl.) Trustees seek payment of the delinquent fringe benefit contributions, prejudgment interest, liquidated damages, and reasonable attorneys' fees and costs.[2] (*Id.*)

Trustees served Coleman on November 27, 2017, but Coleman failed to plead, respond, or otherwise defend in the present action. (ECF Nos. 9, 12.) As a result, on December 21, 2017, Trustees requested that the Clerk to enter default against Coleman, and the Clerk entered a default on December 22, 2017. (ECF Nos. 11–12.) Shortly thereafter, Trustees moved for entry of default judgment against Coleman. (ECF No. 14.) That Motion is now before the Court.

## III.    LEGAL STANDARD

Before a court can enter a default judgment against a defendant, a plaintiff must satisfy the procedural requirements for default judgment set forth in Federal Rules of Civil Procedure 54(c) and 55(a), as well as Local Rule 55-1. Local Rule 55-1 requires

---

[2] In their Complaint, Trustees request that the Court (1) order Coleman to post and deliver either a good faith deposit, or a performance bond, and (2) order the creation of a constructive trust on all applicable property and order the transfer of the applicable property to the Trustees. (*Id.* ¶ 27.) However, the Trustees do not move for Default Judgment regarding this equitable relief and, therefore, the Court does not address it.

4

that the movant submit a declaration establishing: (1) when and against whom default was entered; (2) identification of the pleading entering default; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice. *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Federal Rule of Civil Procedure 55(b)(2) authorizes district courts discretion to grant default judgment after the Clerk enters default under Rule 55(a). *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When moving for a default judgment, the well-pleaded factual allegations in the complaint are accepted as true, with the exception that allegations as to the amount of damages must be proved. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam); *see also* Fed. R. Civ. P. 54(c) ("[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings").

In exercising its discretion, the Court considers the *Eitel* factors: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV.  DISCUSSION

### A.  Procedural Requirements

Trustees have satisfied the procedural requirements for the entry of a default judgment against Coleman. The Clerk entered a default against Defendant on December 22, 2017. (ECF No. 12.) Trustees' counsel declares that: (1) Coleman is not an infant or incompetent person; (2) Coleman is not covered under the Servicemembers Civil Relief Act, and (3) he served Coleman with the Motion for Default judgment. (Decl. of Michael Y. Jung ("Jung Decl.") ¶¶ 7–12, ECF No. 18.)

Trustees have therefore complied with the Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1.

**B.    *Eitel* Factors**

The Court concludes that the *Eitel* factors weigh in favor of entering a default judgment.  The Court will discuss each factor in turn.

### 1.    Trustees Would Suffer Prejudice

The first *Eitel* factor asks whether the plaintiff will suffer prejudice if a default judgment is not entered.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Coleman has failed to participate in this action, and without a default judgment, Trustees will have no other recourse for recovery.  Therefore, this factor favors entry of default judgment.

### 2.    Trustees Brought Meritorious Claims and Trustees' Complaint Was Sufficiently Pleaded

The second and third *Eitel* factors "require that a plaintiff 'state a claim on which [it] may recover.'"  *PepsiCo*, 238 F. Supp. 2d at 1175; *Philip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D. 494, 499 (C.D. Cal. 2003).  Trustees assert two claims against Coleman: (1) breach of the CBA and violation of ERISA § 515; and (2) breach of written contract (Settlement Agreement).  (*See* Compl.)

#### a.    Breach of CBA and ERISA Violation

Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145; *see also Winterrowd v. David Freedman & Co., Inc.*, 724 F.2d 823, 826 (9th Cir. 1984).  If the employer fails to do so, the plan or a plan fiduciary may bring an action to recover the unpaid contributions.  29 U.S.C. § 1132(d)(1); *Bd. of Trustees of Bay Area Roofers Health & Welfare Trust Fund v. Westech Roofing*, 42 F. Supp. 3d 1220, 1224 (N.D. Cal. 2014).

Here, Trustees allege that Coleman was obligated to make monthly contributions to the Trustees under the terms of a CBA. (Compl. ¶ 16.) Coleman provided monthly reports to Trustees, but failed to pay $9,157.95 in fringe benefit contributions. (Ramos Decl., Exs. G–H.) Further, Trustees allege that Coleman admitted in its monthly reports that that the unpaid fringe benefits were owed to Trustees. (Compl. ¶ 29.) While the contribution owed for work performed in October 2017 did not become delinquent until after the Complaint was filed, the Complaint expressly includes a claim for additional amounts of fringe benefit contributions that would later be established by proof. (*Id.* ¶ 18); *see N. California Glaziers Architectural Metal & Glass Workers Welfare Tr. v. Straight Line Caulking & Waterproofing*, No. C 99-0683 CRB, 1999 WL 375611, at *1 (N.D. Cal. June 7, 1999) ("A court may enter judgment for contributions owed and liquidated damages for contributions that become delinquent after the complaint is filed.").

As an employer obligated under the terms of the CBA to make contributions to the Trustees, Coleman's failure to make such contributions constitutes a violation of ERISA section 515. *See* 29 U.S.C. § 1145. As such, the Court finds that Trustees have sufficiently pleaded a meritorious claim for breach of CBA and to recover delinquent contributions under ERISA, whether occurring before or after the Complaint was filed.

### b.    Breach of Written Settlement Agreement

To prevail on its breach of contract claims, Trustees must prove (1) the existence of a contract, (2) performance by Trustees, (3) breach by Coleman, and (4) damage to Trustees as a result of Coleman's breach. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010).

Trustees' Complaint, taken as true, adequately alleges all four elements of a claim for breach of contract. (Compl.); *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[U]pon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

First, Trustees allege they entered into a written Settlement Agreement with Coleman. (Compl. ¶ 29.) The Settlement Agreement was executed and signed by both parties. (Ramos Decl., Ex. E.) Second, Trustees sufficiently allege they substantially performed their obligations under the Settlement Agreement by providing Coleman written notice of its failure to comply with the terms of the agreement. (Comp. ¶ 31.) Third, Coleman breached the agreement by failing to pay Trustees the required fringe benefit contributions under the CBA and section 515 of ERISA, and only paid Trustees two of the twelve monthly installments due under the Settlement Agreement. (*Id.* ¶ 31; Ramos Decl. ¶ 17–18.) Fourth, Trustees allege total damages of $43,296.33, plus post-judgment interest, that they incurred as a direct result of Coleman's failure to pay fringe benefit contributions. (Mot. 20, ECF No. 15.) These damages consist of $23,326.57 for amounts still owed by Coleman under the Settlement Agreement, $9,157.95 for Coleman's unpaid fringe benefit contributions, $168.46 in prejudgment interest, $915.80 in liquidated damages, $9,277.55 in attorneys' fees and litigation expenses, and $450.00 in costs. (Ramos Decl., Exs. E–H; Jung Decl., Exs. A–B.)

Trustees have sufficiently pleaded a meritorious claim for breach of contract against Coleman, and the Court addresses the correct calculation of the alleged damages below. *Geddes*, 559 F.2d at 560 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

### 3. The Amount at Stake Does Not Overcome Other Factors in Favor of Default Judgment

The fourth *Eitel* factor balances the sum of money at stake with the "seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No. C 11–0961–CW (MEJ), 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011). The amount at stake must not be disproportionate to the harm alleged. *Id.* Default judgments are disfavored where the sum of money requested is too large or unreasonable in relation

to a defendant's conduct. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

The total amount Trustees seek to recover is $43,296.33, plus post-judgment interest, as itemized above. (Ramos Decl., Exs. E–H; Jung Decl., Exs. A–B.) Trustees have presented sufficient evidence that the amount they seek is directly proportional to the amounts due and owing under the Settlement Agreement, and ERISA. (*See* Ramos Decl., Exs. A–H.) The alleged damages are supported by verifiable monthly reports and well-documented schedules of expenses. (*Id.*) The Court finds that the amount at stake is reasonably proportionate to the harm caused by Coleman's failure to pay contributions and subsequent breach of the Settlement Agreement. Thus, the amount at stake favors entry of default judgment.

### 4. There is No Possibility of Dispute as to Material Facts

The next *Eitel* factor considers the possibility that material facts are disputed. *PepsiCo*, 238 F. Supp. 2d at 1177. The general rule is that a defaulting party admits the facts alleged in the complaint to be taken as true. *Geddes*, 559 F.2d at 560. As discussed, Trustees have adequately alleged the facts necessary to establish the claims in the Complaint, and Coleman has not challenged the validity of Trustees' allegations because Coleman failed to answer. (*See* ECF No. 12.) The facts as pleaded are also supported by documentary evidence. Therefore, the Court finds that this factor weighs in favor of default judgment.

### 5. Defendant's Default Was Not Due to Excusable Neglect

There is little possibility of excusable neglect and default judgment is favored when the defendant fails to respond after being properly served. *See Wecosign, Inc.*, 845 F. Supp. 2d at 1082. Here, Trustees served Coleman with the Complaint on November 27, 2017, and the present motion on February 9, 2018. (ECF Nos. 9, 19.) Additionally, Trustees repeatedly advised Coleman of the delinquencies prior to filing this motion, yet Coleman failed to participate in this litigation in any meaningful way.

(Jung Decl. ¶ 13–14.) Coleman has made no showing of excusable neglect. Accordingly, the sixth *Eitel* factor favors entry of a default judgment.

### 6. Decision on the Merits

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, where, as here, a defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *See PepsiCo*, 238 F. Supp. 2d at 1177. Because Coleman failed to respond to Trustees' Complaint, the Court finds that the seventh *Eitel* factor does not preclude entry of a default judgment. (ECF No. 45.)

## C. Damages

In an action to recover delinquent contributions, the Court must award:
(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of--
    (i) interest on the unpaid contributions, or
    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Plaintiffs cannot rely solely on allegations to establish damages, for "even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages." *LG Elecs., Inc. v. Advance Creative Computer Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002); *see also Wecosign, Inc.*, 845 F. Supp. 2d at 1079 ("[A]llegations of the amount of damages suffered are not necessarily taken as true."). Here, in addition to unpaid contributions, Trustees request the Court award prejudgment interest, liquidated damages, attorneys' fees, costs, and post-judgment interest. (Mot. 20.) The Court addresses each request in turn.

### 1.  Amount Owed Under Settlement Agreement

Trustees seek $23,326.57 for amounts still owed by Coleman under the Settlement Agreement.  (*Id.*)  According to the Settlement Agreement, Coleman agreed to "pay to the Trusts the principal sum of $26,712.96, plus amortized interest thereon at the rate of 8% per annum accruing from July 15, 2017, by paying the Trusts $2,323.72 on or before August 15, 2017, and a like amount on or before the fifteenth (15th) day of each month until all principal and interest due under this Settlement Agreement has been paid in full."  (Ramos Decl. ¶ 17, Ex. E, p. 67.)  Trustees have only received two installment payments of $2,323.72, which Trustees prove by way of a Schedule of payments.  (*Id.* ¶ 18, Ex. F.)  Therefore, the amount requested by Trustees under the Settlement Agreement is legitimate and warranted.  Accordingly, the Court awards Trustees a total of $23,326.57 amounts still owed by Coleman under the Settlement Agreement.

### 2.  Unpaid Contributions

Trustees also seek $9,157.95 for Coleman's unpaid fringe benefit contributions.  (Mot. 20.)  Trustees submit monthly reports from Coleman establishing the number of hours worked by Coleman employees, and the corresponding required contributions.  (Ramos Decl., Ex. G.)  Trustees also set forth calculations in the declaration of Bernardo Ramos, calculating interest due on the fringe benefit contributions.  (*Id.*, Ex. H.)  The Court awards Trustees a total of $9,157.95 for unpaid fringe benefit contributions owed by Coleman, pursuant to 29 U.S.C. § 1132(g)(2)(A).  This brings Trustees' total damages for the amount owed under the Settlement Agreement and unpaid contributions to $32,484.52.  (*Id.*)

### 3.  Prejudgment Interest

Trustees also seek prejudgment interest on the unpaid contributions owed by Coleman based on the monthly reports submitted, accruing from August 2017 through October 2017.  (Mot. 8.)  Under ERISA, prejudgment interest is mandatory and is "determined by using the rate provided under the plan, or, if none, the rate prescribed

under section 6621 of title 26." 29 U.S.C. § 1132(g)(2).  Here, the Master Agreement does not provide an interest rate.  (Mot. 7; Ramos Decl. ¶ 8, Ex. B–C.)  Therefore, interest is calculated pursuant to 26 U.S.C. § 6621(a), which states "[t]he underpayment rate established under this section shall be the sum of – (A) the Federal short-term rate determined under subsection (b), plus (B) 3 percentage points."  IRS Revenue Ruling 2017-25 provides that the applicable interest rate during the relevant time period—September 2017 through the March 2018 hearing date— is 4% annum.  (Mot. 8; Ramos Decl. ¶ 20, Ex. H.)

Trustees argue the interest owed by Coleman therefore totals $168.46 and is calculated from the date the contributions became due through the date paid, or unpaid, and through the date of the hearing on this motion (March 19, 2018).  (Mot. 8; Ramos Decl. ¶ 20, Ex. H.)  Moreover, Trustees are entitled to prejudgment interest because Trustees prayed for such damages in the Complaint.  (Compl. ¶ 24.); *see* Fed. R. Civ. P. 54 ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").  The Court concludes that the delinquency spreadsheet and related documents sufficiently evidence Trustees' entitlement to $168.46 in prejudgment interest.  (Ramos Decl. ¶ 19–20, Ex. H.)

### 4.  Liquidated Damages

Trustees also request $915.80 in liquidated damages.  (Mot. 8.)  Under 29 U.S.C. § 1332, liquidated damages on unpaid contributions are mandatory and are awarded at the rate provided for in the applicable agreement, or an amount equal to the prejudgment interest, whichever is greater.  *See* 29 U.S.C. § 1132(g)(2)(C); *Operating Eng'rs Pension Tr. v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984).  Here, the prejudgment interest on the delinquent fringe benefit contributions totals $168.46.  (Mot. 8.)  In contrast, the CBA provides for 10% liquidated damages, equaling $915.80.  (Ramos Decl. ¶ 21.)  Because the prejudgment interest is less than the interest provided by the CBA, the Court finds that Trustees are

entitled to the liquidated damages in the amount of $915.80 based on the unpaid contributions owed for the months of August 2017 through October 2017.  (*Id.*)

### 5.  Attorneys' Fees

Trustees also request $9,277.55 in attorneys' fees and litigation expenses. (Mot. 11; Jung Decl., Exs. A–B.)  Trustees use the lodestar method to calculate attorneys' fees.  (*Id.*)  Under the Local Rules for this district, however, attorneys' fees awarded upon default judgment are generally calculated according to a fee schedule. C.D. Cal. L.R. 55-3.  When "[a]n attorney claim[s] a fee in excess of this schedule [he] may file a written request at the time of entry of the default judgment" and the Court "shall hear the request and render judgment for such fees as the Court may deem reasonable."  *Id.*  Because Trustees submit a timely request, the Court must determine whether the proposed attorneys' fees are reasonable.  *See Aiuppy v. Set Glob. Inc.*, No. CV1307198DDPPJWX, 2015 WL 5838461, at *2 (C.D. Cal. Oct. 5, 2015) (where counsel requests a fee award in excess of that provided in the Local Rules, "the Court [must] determine if the departure from the Local Rules is reasonable under the lodestar method").

Attorneys' fees under ERISA § 502(g)(1) "are calculated using the lodestar approach, which multipl[ies] the number of hours reasonably expended by the attorney(s) on the litigation by a reasonable hourly rate."  *McElwaine v. U.S.W., Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999).  The Court then determines whether the hours spent and the rate charged were reasonable.

A district court has "wide latitude in determining the number of hours that were reasonably expended by the prevailing lawyers."  *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001).  The fee applicant "bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of hours worked."  *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).  From June 2017, through the date of filing the Motion for Default Judgment, attorneys and paralegals from Laquer, Urban, Clifford & Hodge spent 31.6 hours on this matter.

(Jung Decl. ¶ 2–3.)  This total consists of 1.9 hours billed by Brian Ray Hodge (BRH), 0.8 hours billed by Susan Graham Lovelace (SGL), 26.2 hours billed by Michael Y. Jung (MYJ), and 2.7 hours billed by Kimberly A. Morrison (KAM).  (*Id.* ¶ 3.)  The firm's billing records provide detailed time records describing the work performed. (*Id.*, Ex. A); *see also Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988) ("Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case.").  Considering the Complaint and the evidence and briefing submitted in support of Trustees' Motion for Default Judgment, the Court finds that the number of hours performed is reasonable. Jung also declares the hours spent were reasonably necessary.  (Jung Decl. ¶ 5); *see also Perkins*, 847 F.2d at 738.

To determine whether the hourly rates are reasonable, the Court can consider whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Trs. of S. Cal. IBEW–NECA Pension Plan v. Electro Dynamic Servs.*, CV 07–05691 MMM (PLAx), 2008 WL 11338230, at *5 (C.D. Cal. Oct. 14, 2008) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96, n.11 (1984)).

Trustees seek $360.00 per hour for the services of attorney BRH, $360 per hour for attorney SGL, $300.00 per hour for attorney MYJ, and $110.00 per hour for paralegal KAM.  (Jung Decl. ¶ 3.)  Based on the hours worked, Trustees request a total of $9,129.00 in attorneys' fees, consisting of $648.00 for BRH's services, $275.00 for SGL's services, $7,860.00 for MYJ's services, and $297.00 for KAM's services.  (*Id.*)  According to the Declaration of Angelo T. Nicodemo, an accountant who regularly reviews legal bills for his clients, "the hourly rates currently charged to Trust Funds with which [he] is familiar range from a low of $190.00 per hour to $400.00 per hour or higher, with a majority of law firms charging between $200.00 per hour and $360.00 per hour." (Decl. of Angelo T. Nicodemo ("Nicodemo Decl.") ¶ 4, ECF No. 17.)

Moreover, Trustees' counsel outline their experience representing various Taft-Harley multi-employer trusts for over forty years. (Jung Decl. ¶ 5(i).) BRH has been licensed to practice law in California since 1970, has represented various trusts, and has lectured frequently on ERISA collection issues. (*Id.*) SGL is a partner at the law firm, obtained her J.D. in 1992, and since 2003, her practice has primarily involved handling collection actions for Taft-Harley multi-employer trust funds. (*Id.*) KAM is a certified paralegal and has worked for the firm since 1997. (*Id.*)

Therefore, the Court finds that the attorneys of Laquer, Urban, Clifford, & Hodge LLP have demonstrated their skill and experience so as to justify the hourly rates. *See Hawkins-Dean v. Metro. Life Ins. Co.*, No. 2:03-CV-01115ER, 2007 WL 2735684, at *3 (C.D. Cal. Sept. 18, 2007) (awarding $575 per hour for senior partner time and $350 per hour for associate time in ERISA case).

Finally, the Court must look to the *Kerr* factors[3] in determining whether the lodestar figure is reasonable and if it should be adjusted. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). When looking at the totality of the circumstances, and considering the Declaration of Michael Jung, none of the *Kerr* factors indicate the Court should adjust the lodestar figure. (*See* Jung Decl. ¶ 5); *see Blum*, 465 U.S. at 898–901 (noting that alterations in the lodestar fee are only warranted in exceptional cases). Thus, $9,129.00 is a reasonable amount of attorneys' fees, and the Court awards it in full.

### 6. Litigation Expenses

---

[3] The *Kerr* factors assess reasonableness of attorneys' fees, and are not determinative, and are largely subsumed by the lodestar calculation itself. *Clark v. City of Los Angeles*, 803 F.2d 987, 990–91 (9th Cir. 1986). They include: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

Trustees also argue they are entitled to their litigation expenses in the total amount of $148.55, including $133.25 for costs related to copying, printing, and scanning, $15.00 for attorney service fee, and $0.30 for online research costs. (Jung Decl. ¶ 6, Ex. B.) Trustees contend that these expenses are recoverable as 'reasonable attorneys' fees' under 29 U.S.C. § 1132(g)(2)(D), because they are customarily billed separate from, and in addition to, the hourly rate charged by attorneys in the relevant market. (*Id.*); *see Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006); *Yip v. Little*, 519 F. App'x 974, 977 (9th Cir. 2013) (internal citation omitted) ("Costs are a category of expenses distinct from attorney's fees under 29 U.S.C. § 1132(g)(1). However, if it is 'the prevailing practice in the local [legal] community' to separately bill reasonable litigation expenses to the client, lawyers may recover those expenses as 'attorneys['] fees.'"). Trustees provide Nicodemo's declaration, which explains that it is the standard practice in the Trust Fund Community to bill reasonable litigation expenses to the client. (Nicodemo Decl. ¶ 6.) Therefore, the Court awards Trustees the requested litigation expenses as reasonable attorneys' fees.

### 7. Cost

Trustees also seek $450.00 in costs incurred pursuing this action, which includes the $400.00 filing fee and $50.00 to serve the Complaint on Coleman. (Jung Decl. ¶ 6, Ex. B.) Pursuant to 29 U.S.C. § 1132(g)(2)(D), costs of the action are recoverable. Here, Trustees' filing fees and fees for service of process are reasonable and recoverable, and, thus, the Trustees may file a Notice of Application to the Clerk to Tax Costs, after the Court enters judgment. C.D. Cal. L.R. 54-3, 54-3.1, 54-4.2.

### 8. Post-Judgment Interest

Finally, Trustees seek post-judgment interest. (Mot. 20; Compl. ¶¶ 24, 30; First Claim for Relief, ¶ 3; Second Claim for Relief, ¶ 6.) Pursuant to 28 U.S.C. § 1961(a), post-judgment interest is appropriate on any money judgment in a civil case recovered in a district court. *See Trustees of Operating Eng'rs Pension v. Joel Silverman &*

*Assocs., Inc.*, No. CV 08-5410 GAF (CTX), 2009 WL 10670632, at \*6 (C.D. Cal. Jan. 30, 2009).  Post-judgment interest is "calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a). Accordingly, the Court grants Trustees' request for post-judgment interest as set forth in § 1961(a).

//

//

//

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** Trustees' Motion for Entry of Final Default Judgment.  (ECF No. 14.)  The Court awards Trustees' with $43,296.33 in damages, plus post judgment interest.  Upon entry of judgment, the Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

March 19, 2018

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**